**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**PIPKIN and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 1, 2020**

# In the Court of Appeals of Georgia

**A19A2170. COBB v. THE STATE.**

COLVIN, Judge.

On appeal from his conviction on four counts of child molestation, Kenneth Cobb argues that the trial court erred in failing to instruct the jury on his good character. Cobb also argues that the trial court made errors in sentencing, including failing to merge two counts and failing to impose a split sentence as to one of the counts. Because we agree with the last assertion only, we affirm in part, vacate in part, and remand for resentencing.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but

determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict, the record shows that in late November 2011, Cobb began to molest both of his daughters. The 12-year-old daughter testified that at the first time, with her mother and sisters asleep in a different room, and then at other times over the following year and more, Cobb put his hand up her shirt and down her pants, touching her breasts and genitals. These touchings occurred more than 20 times. The 11-year-old daughter testified that during the same period, Cobb would come into her room while she was asleep and put his hands up her shirt, touching her chest. This happened at least five times. Neither child knew what Cobb was doing to the other.

In December 2012 or January 2013, more than a year after the abuse began, the older daughter told her boyfriend that her father had "raped" her. Later that same day, she told another friend about the abuse, adding that it had been going on for a year. The boyfriend told his grandmother about the abuse on the day he learned of it; the grandmother alerted police two weeks later. When a caseworker first asked the older

daughter about the abuse, she began to cry and confirmed that her father had abused her, but said that she loved him and feared being blamed for disclosing the family's troubles. The younger daughter reported the abuse she had suffered to her grandmother shortly afterward and at trial.

Cobb was arrested in mid-January 2013 and charged with two counts of child molestation and one count of sexual battery for each child, for a total of six counts (Counts 1-3 concerning the older daughter and Counts 4-6 concerning the younger). At the conclusion of the November 2013 trial, the jury found Cobb guilty on all counts. The trial court merged the sexual battery counts into the child molestation counts and sentenced Cobb to 10 years on Count 1, 20 years with 10 to serve concurrently on Count 2, and an additional 20 years (10 running consecutively) on Counts 3 and 4, for a total of 30 years with 20 to serve. After Cobb moved for a new trial, the State conceded that as to Count 4 (concerning the touching of the younger daughter's genitals), the evidence was insufficient. The trial court directed a verdict on that count, denied the motion for new trial in other respects, and imposed the same total sentence by increasing the sentence on Count 3 (concerning the touching of the older daughter's genitals) from 10 years to serve to 20 years with 10 to serve, for the same total (after resentencing) of 30 years with 20 to serve. This appeal followed.

3

1. Although Cobb does not assert that the evidence was insufficient, we have reviewed the record and conclude that the evidence outlined above was sufficient to sustain his conviction for child molestation. See OCGA § 16-6-4 (a) (defining child molestation); *Gunn v. State*, 300 Ga. App. 229, 230-231 (1), (2) (684 SE2d 380) (2009) (evidence that a defendant touched a victim's genitals and breasts sufficed to sustain a conviction on two counts of child molestation, into which his conviction for sexual battery merged); *Jackson*, supra.

2. Cobb first argues that the trial court erred in failing to instruct the jury sua sponte on his sole defense of good character. We disagree.

Because Cobb did not request such an instruction, we review this assertion only for plain error, as follows:

> "First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously

4

affects the fairness, integrity or public reputation of judicial proceedings."

*Hampton v. State*, 302 Ga. 166, 167 (805 SE2d 902) (2017), quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *Hampton*, 302 Ga. at 168.

The record shows that Cobb's principal strategy was to create reasonable doubt as to the veracity of his daughters' testimony against him, which he himself characterized at trial as "inaccurate and deceptive." Cobb began to implement this strategy in opening argument, when he claimed that the older daughter had "pushed the boundaries" that he had set, and went on to elicit testimony concerning his disapproval of her relationship with her boyfriend, including her phone pictures and social media posts; arguments over her clothes and makeup; and her hostility to the rules that Cobb set. This evidence was elicited for the purpose of suggesting that because they resented his authority, his daughters had a motive to lie: "it's diametrically opposed what the girls say and what Mr. Cobb says. But that is enough to raise a question in your mind . . . . [T]wo diametrically opposed version[s] of events is enough to be a reasonable doubt." Witnesses testifying on Cobb's behalf

5

spoke of his softball coaching and the lack of anything unusual in his public behavior concerning his daughters. They did not testify as to their personal knowledge of his good or law-abiding reputation in the community.

Because this record supports a determination that good character was not Cobb's sole defense, the trial court did not commit clear or obvious error when it failed to charge the jury on that defense in the absence of a request. See *Pinkston v. State*, 353 Ga. App. 88, 91 (3) (834 SE2d 571) (2019) (where accident was not defendant's sole defense to charges of child molestation, court's failure to sua sponte instruct jury on that defense was not obvious error). But even assuming that such error occurred, when references to Cobb's good character were scant at best, we cannot conclude that his substantial rights were affected by the absence of a sua sponte charge on that issue. *Jackson v. State*, 306 Ga. 69, 87 (5) (c) (829 SE2d 142) (2019) (no plain error in failing to give a good character instruction when, "even assuming that the testimony to which [the defendant] points can be characterized as admissible evidence of his good character, it was so scant and nebulous" that the absence of an instruction on good character "would not likely have made any difference in the jury's verdict") (citation omitted).

6

For both of these reasons, Cobb has not shown that the trial court's failure to give an instruction on his good character was plain error.

3. As to sentencing, Cobb asserts that the trial court erred when it (a) considered his testimony on his own behalf as an aggravating factor; (b) failed to merge the two counts concerning the older daughter; (c) increased the sentence on Count 3; and (d) failed to impose a split sentence as to Count 1 under OCGA § 17-10-6.2 (b).

(a) Citing federal authority including *United States v. Dunnigan*, 507 U. S. 87 (113 SCt 1111, 122 LE2d 445) (1993), Cobb argues that the trial court deprived him of due process when it found that his testimony had been found untrue and was thus an aggravating factor in his sentence. We disagree.

As a preliminary matter, we note that *Dunnigan* is inapposite because the federal court there was required, under federal sentencing guidelines, to make specific findings of fact before it could enhance a defendant's sentence based on his untruthful testimony at trial. 507 U. S. at 91 (I) (citing U.S.S.G. § 3C 1.1). By contrast, Georgia law provides that a trial court may not impose a

> sentence in excess of that which would be justified by any of the rehabilitative, protective, deterrent or other purposes of the criminal law

7

merely because the defendant has chosen to require the prosecution to prove the defendant's guilt at trial rather than to enter a plea of guilty or nolo contendere.

USCR 33.6 (B). As this Court has noted, this rule "does not require the trial judge to sentence the defendant to the same sentence that would have been appropriate if the defendant had pled guilty." (Footnote omitted.) *West v. State*, 241 Ga. App. 877, 878 (528 SE2d 287) (2000). "It is not error for the trial judge to impose a greater sentence upon a defendant after he has heard the evidence at trial than he might have imposed in conjunction with a guilty plea." Id. (punctuation and footnote omitted).

We have already noted that Cobb characterized his daughters' testimony at trial as "inaccurate and deceptive," and he was not obligated to take the stand in his own defense. The record shows, moreover, that before being sentenced, Cobb "beg[ged] for mercy from the Court," insisting that he "love[d] [his daughters] more than anything on earth." The trial court then found as follows:

> [I]f you testify as you did in this case and the jury chooses not to believe you, then under the law . . . it would be considered that you didn't tell the truth. *The jury found that you didn't tell the truth.* That's essentially where we stand. And so your defense was that . . . you were telling the truth and that the victims were not. And that's reprehensible.

8

(Emphasis supplied.) The trial court then imposed its sentence. On this record, we cannot say that the trial court erred when it took proper account of the jury's implicit finding as to Cobb's credibility and imposed a sentence within the statutory range in order to deter others from committing child molestation or attacking their victims' credibility at trial. See Uniform Superior Court Rule 33.6 (including deterrence as one permissible purpose of sentencing).

(b) Cobb also asserts that the trial court erred in not merging Counts 1 and 2, both of which concerned the molestation of his older daughter. We disagree.

OCGA § 16-6-4 (a) (1) provides that a person commits child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). We understand that in a criminal statute, the use of the adjective "any" may render the quantity of the noun that follows "inconsequential." *Coates v. State*, 304 Ga. 329, 331 (818 SE2d 622) (2018). In *Scott v. State*, 306 Ga. 507 (832 SE2d 426) (2019), however, the Supreme Court of Georgia held that an appellate court reviewing a conviction for multiple counts of child molestation should engage in a "unit of prosecution" analysis:

9

[M]erger analysis requires careful interpretation of the criminal statute at issue to identify *the unit of prosecution – the precise act or conduct that the legislature criminalized*. . . . [W]here the acts of child molestation appear to have occurred in discrete incidents, precisely identifying the applicable unit of prosecution may not affect the merger decision. [By contrast, where] the acts of molestation alleged in different counts were part of *a single course of conduct occurring in a relatively short time frame*, the unit of prosecution could determine if the defendant faces multiple, consecutive 20-year sentences or only one sentence.

(Citations and punctuation omitted; emphasis supplied.) Id. at 509-510 (2).

In separate counts, this indictment charged Cobb with the separate acts of unlawfully touching the victim's breasts and genitals "between the 1st day of November 2011 and the 14th day of January 2013, the exact dates of the offense[s] being unknown" to the grand jury. The record also supports a conclusion that the attacks occurred more than 20 times over the charged period. Under these circumstances, where a rational trier of fact could conclude that "the acts of child molestation appear to have occurred in discrete incidents" over a relatively *long* period, the State was authorized to charge the two crimes in two different units of prosecution. See *Scott*, 306 Ga. at 510. Compare *Jones v. State*, — Ga. App. at *5 (1) (c) (ii) (Case No. A19A2224, decided March 13, 2020) (citing *Scott*, and merging

10

counts involving sexual battery and aggravated sodomy when those counts were "based on the same act" and when the first crime "d[id] not require any fact that the crimes of sodomy or aggravated sodomy d[id] not.").

(c) Cobb also argues that the trial court was vindictive[1] when it reimposed the same sentence of 30 years with 20 to serve even after directing a verdict of acquittal as to Count 4. We disagree.

"[T]rial courts generally have the discretion to fashion sentences that fit the crimes for which the defendant is convicted, so long as the sentences fall within the statutory ranges." (Citations omitted.) *State v. Riggs*, 301 Ga. 63, 68 (799 SE2d 770) (2017); see also OCGA § 17-10-1 (a) (1) (A) (the only limitation on a sentence is that the prescribed sentence indicates a specific number of months or years and falls within the statutory range). In *State v. Hudson*, 293 Ga. 656 (748 SE2d 910) (2013), moreover, our Supreme Court adopted the "aggregate approach" to sentences imposed after a successful post-conviction challenge to some but not all counts of that conviction. As the Court explained:

---

[1] See, e.g., *North Carolina v. Pearce*, 395 U.S. 711 (89 SCt 2072, 23 LE2d 656) (1969), as limited by *Alabama v. Smith,* 490 U.S. 794 (109 SCt 2201, 104 LE2d 865) (1989).

11

A sentencing court must have the discretion to fashion a sentence commensurate with the crimes for which the defendant is convicted. . . . [J]udges considering multiple related counts stemming from a single course of conduct typically craft sentences on the various counts as part of an overall sentencing scheme. Where that scheme unravels due to elimination of some of the original counts, the judge should be given a wide berth to fashion a new sentence that accurately reflects the gravity of the crimes for which the defendant is being resentenced.

(Citation omitted.) Id. at 660. Most important in this context is the Court's note that "[a] rule presuming vindictiveness only where the subsequent sentence is more severe *in the aggregate* affords the judge the appropriate level of discretion in resentencing under these circumstances." (Emphasis supplied.) Id. at 660-661; see also id. at 659 ("It is now clear beyond question that the evil *Pearce* sought to prevent was sentencing judge vindictiveness, not the mere imposition of an enhanced sentence on retrial or remand.") (citation omitted).

Cobb suggests that we should draw a distinction between cases in which counts are held on appeal to have failed or merged and those, as here, where a directed verdict is entered after trial. We see no basis for such a distinction. Both categories involve the "elimination of some of the original counts," "related" and "stemming from a single course of conduct," *Hudson*, 293 Ga. at 660 – here, a father's

12

molestation by touching of both of his daughters in the same household over the same fourteen-month period. We also heed our Supreme Court's admonition that an "aggregate approach" must allow a trial court to craft sentences "as part of an overall sentencing scheme," with "wide berth" given "to fashion a new sentence that accurately reflects the gravity of the crimes for which the defendant is being resentenced." (Citation omitted.) Id. at 660-661. Further, any distinction between directed verdicts and successful challenges on appeal might deter the State from making a meritorious concession of insufficiency below rather than awaiting reversal on appeal.

For all these reasons, we find no error or vindictiveness in the trial court's resentencing when, as here, the aggregate sentence remained the same as before the resentencing on Count 3. See *Arnold v. State*, 324 Ga. App. 58, 61 (1) (749 SE2d 245) (2013) (no reasonable likelihood of vindictiveness in the imposition after trial of a greater sentence than might have been imposed after a guilty plea); *People v. Johnson*, 363 P.3d 169, 181-182 (4) (Colo. 2015) (presumption of vindictiveness did not apply to sentence on remand for the single remaining count that was twice the length of the original sentence on that count).

(d) As the State concedes on appeal, the trial court erred when it sentenced Cobb on Count 1 to ten years in prison with no probation. See former OCGA § 17-10-6.2 (b) (2017) ("any person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to such sexual offense"), Ga. L. 2017, p. 489; *State v. Riggs*, 301 Ga. 63, 64-67, 74 (799 SE2d 770) (2017) (the split-sentence requirement of former OCGA § 17-10-6.2 (b) applies to each sexual offense count). And this Court has held that the July 2017 amendment enabling split aggregate sentencing for sexual offenses is not retroactive. See *Hardin v. State*, 344 Ga. App. 378, 388- 389 (810 SE2d 602) (2018). We therefore vacate Cobb's sentence on Count 1 and remand for resentencing in accordance with *Riggs* and this opinion. See *Willliams v. State*, 306 Ga. 674, 678 (2) (832 SE2d 843) (affirming in part and vacating in part and remanding for resentencing when one portion of the sentence was erroneous).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. McFadden, P. J., and Pipkin, J., concur.*

14